# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Keith Johnson,

      Petitioner,

      v.

United States of America,

      Respondent.

No. 3:16-cv-00215 (MPS)

## MEMORANDUM AND ORDER

Keith Johnson, a federal prisoner, petitions this Court under 28 U.S.C. § 2255 to vacate his sentence, which was imposed as a result of his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  On October 8, 2008, Judge Ellen Bree Burns sentenced Johnson to 240 months imprisonment after finding that Johnson was eligible for the enhancement set forth in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) (the "ACCA").[1] That statute imposes a mandatory minimum of 15 years imprisonment if an individual convicted under 18 U.S.C. § 922(g) "has three previous convictions by any court . . . for a violent felony." In light of two recent Supreme Court decisions – namely, *Johnson v. United States*, 135 S. Ct. 2551 (2015),[2] and *Welch v. United States*, 136 S. Ct. 1257 (2016) – Johnson asserts that this Court must vacate his sentence, conduct a resentencing, and release him, because one of the three predicate offenses underlying his ACCA sentence is no longer a "violent felony" and, as a result, he has served more than the maximum sentence authorized by law.  I agree, and conclude that Johnson is entitled to a resentencing.  I also find that Johnson has not been convicted of three

---

[1] Judge Burns retired in 2015.
[2] To avoid confusion between the Supreme Court's 2015 decision and proceedings involving Keith Johnson – the petitioner in this case – I cite the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), as "*Johnson* (U.S. 2015)."  *Johnson* (U.S. 2015) involved a petitioner named Samuel James Johnson.

violent felonies for purposes of the ACCA.  As a result, I amend the judgment in *USA v. Johnson*, 3:03-cr-215 (MPS), and impose a sentence of 120 months of imprisonment and 3 years of supervised release, the maximum sentence authorized by the statute governing his conviction. Because he has served more than that amount of prison time for this conviction, Johnson is entitled to immediate release.

I.      **Background**

   A.  **Original Sentencing and Direct Appeal**

On July 9, 2004, a jury convicted Johnson of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (No. 3:03-cr-215 ("Crim. Dkt."), ECF No. 47.) As of that date, Johnson had been convicted of several felonies under Connecticut law, including but not limited to (1) conspiracy to commit robbery in the first degree in 1987, (2) robbery in the third degree in 1988, (3) robbery in the first degree, conspiracy to commit robbery in the first degree, and assault in the second degree in 1990, (4) attempt to commit robbery in the first degree in 1991, and (5) rioting in a correctional facility in 1994.[3]  In anticipation of sentencing, the United States Probation Office filed a pre-sentence report ("PSR") indicating that Johnson was eligible for an ACCA enhancement.  Paragraph 21 of the PSR stated the following:

> In accordance with § 4B1.4 [of the United States Sentencing Guidelines], the defendant is determined to be an Armed Career Criminal as he has at least three prior violent felonies . . . with disposition dates of May 3, 1994; November 9, 1990; and July 28, 1988.[4]

---

[3] The Indictment listed only three of Johnson's previous felony convictions:  robbery in the third degree in violation of Conn. Gen. Stat. § 53a-136, attempt to commit robbery in the first degree in violation of Conn. Gen. Stat.  §§ 53a-134(a)(4) and 53a-49(a)(2), and rioting in a correctional institution in violation of Conn. Gen. Stat. § 53a-179(b).  (Crim. Dkt. ECF No. 92-1 at 1.)

[4] The felonies listed in this paragraph of the PSR clearly referred to the 1994 conviction for rioting in a correctional facility and the 1988 conviction for robbery in the third degree.  With regard to the reference to November 9, 1990, it is unclear which of the three convictions bearing that date – robbery in the first degree, conspiracy to commit robbery in the first degree, or assault in the second degree – the PSR was referring to.

(PSR, ECF No. 25, at ¶ 21.)

Section 4B1.4(a) of the United States Sentencing Guidelines[5] – the section referenced by the PSR – states, "[a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal."  Section 924(e), the ACCA, sets forth a sentence enhancement for defendants "who violate[] section 922(g) . . . and ha[ve] three previous convictions . . . for a violent felony . . . committed on occasions different from one another."  It defines a "violent felony" as an offense that is punishable by at least a year of imprisonment and that either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."[6]  18 U.S.C. § 924(e)(2)(B).  The ACCA imposes a mandatory minimum sentence of fifteen years imprisonment.  By finding that Johnson was an armed career criminal under Section 4B1.1, the author of the PSR impliedly found that Johnson was eligible for the ACCA's mandatory minimum.[7]  Johnson submitted no objections to the portion of the PSR setting out his ACCA eligibility.  (PSR Addendums, ECF Nos. 25-1, 25-2.)

Judge Burns held a sentencing hearing on September 28, 2004.  During the hearing, Johnson did not object to his ACCA eligibility.  His counsel raised an objection to a one-point

---

[5] No relevant portion of this section has been altered in the period between November 5, 2003 – the version of the Guidelines in effect during Johnson's 2004 sentencing – and the current version of the Guidelines.

[6] As discussed below, in *Johnson* (U.S. 2015), the Supreme Court found unconstitutionally vague the latter portion of this second provision, which identifies "conduct that presents a serious potential risk of physical injury to another" (often referred to as the ACCA's "residual clause").

[7] The PSR also mentioned twelve other convictions in the "Criminal History" section, but did not refer to any of those convictions in the paragraph discussing Johnson's ACCA eligibility.  (*See* PSR at ¶¶ 21, 24–39.)

offense level enhancement that was recommended in Paragraph 21 of the PSR, but that objection

did not concern Johnson's eligibility under the ACCA:

> THE COURT: Mr. Johnson, have you read your presentencing report, sir?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Is there any correction you think needs to be made in that report?
>
> THE DEFENDANT: It's just minor things.
>
> THE COURT: Have you talked to Mr. Weinberger [Johnson's counsel] about those matters?
>
> THE DEFENDANT: Yes, ma'am.
>
> MR. WEINBERGER: Nothing of significance or consequence . . . . we have no corrections to make to the factual statements in the revised presentence report. There is one objection I feel I'm obliged to make. . . . [J]ust for the record, I wanted to object to the increase from the base offense level of 33 to the adjusted offense level of 34.
>
> And I believe -- paragraph 21 [of the PSR], actually, doesn't even mention the base offense level.  The base offense level is 33.[8]  It just goes directly to the adjusted offense level of 34, which is a one-level increase.
>
> THE COURT: Because of the robbery?
>
> MR. WEINBERGER: Correct.  And as I say, I understand that the current state of the law says it's up to your Honor to decide by a preponderance of the evidence that the firearm was used in connection with a robbery, and I'm not going to belabor that point.

(2004 Sentencing Tr., ECF No. 22-1, at 3–4.)  In fact, the 2004 sentencing transcript includes no

discussion of Johnson's eligibility under the ACCA.  In its brief in this Court, the government

---

[8] Attorney Weinberger's statement that the "base offense level is 33" refers to the residual offense level set forth in the Sentencing Guidelines for ACCA-eligible defendants.  *See* U.S.S.G. § 4B1.4(b)(3)(B) ("The offense level for an armed career criminal is the greatest of . . . the offense level applicable from Chapters Two and Three; or . . . the offense level from § 4B1.1 (Career Offender) if applicable; or . . . 34, if the defendant used or possessed the firearm . . . in connection with . . . a crime of violence, . . .; or . . . *33, otherwise*." (emphasis added)).

suggests that Judge Burns "adopted the factual statements set forth in the [PSR]" (Resp't Br., ECF No. 14, at 2), but provides no citation to the record in support of this assertion.  The discussions throughout the sentencing proceeding, however, do suggest that Judge Burns agreed that Johnson fell under the ACCA.  (*See, e.g.*, *id.* at 27 (Judge Burns addressing Johnson: "You are now 40-years-old.  And in the best of circumstances, you're going to be at least 60 when you get out.").)  Nonetheless, nowhere in the record does Judge Burns indicate which of Johnson's prior convictions served as his ACCA predicate offenses, let alone why any of them did.

Judge Burns sentenced Johnson to 262 months of imprisonment.  Johnson appealed, attacking his conviction and sentence.  With respect to his sentence, Johnson argued – for the first time – that his 1994 rioting conviction was not a violent felony under the ACCA's residual clause.  *United States v. Johnson*, 265 Fed. App'x 8, 11 (2d Cir. Feb. 19, 2008) (summary order) (noting that Johnson did not raise this issue at sentencing).  The Second Circuit held that Judge Burns did not commit plain error in finding that the rioting conviction fell within the ACCA's residual clause, i.e., the language of the statute classifying as "violent felonies" those felonies that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).  In light of the Supreme Court's intervening decision in *United States v. Booker*, 543 U.S. 220 (2005), however, the Second Circuit vacated Johnson's sentence and remanded the case for re-sentencing.

### B.  Re-Sentencing, Appeal, and Initial Section 2255 Petition

In his sentencing memorandum submitted in anticipation of the re-sentencing hearing – which Judge Burns held on October 8, 2008 – Johnson argued that his rioting conviction was not a violent felony.  (Crim. Dkt., ECF No. 68, at 9–14.)  At the hearing, when Johnson's counsel mentioned his objection to Johnson's ACCA eligibility, Judge Burns stated, "To me, sir, it's

been confirmed by the Second Circuit that that's appropriate.  I don't see any reason to challenge it."  (2008 Sentencing Tr., ECF No. 22-2, at 10–11.)  Judge Burns sentenced Johnson to 240 months incarceration.

Johnson appealed, arguing that his rioting conviction was not a violent felony.  The Second Circuit disagreed, finding that it qualified under the residual clause.  *United States v. Johnson*, 616 F.3d 85, 94 (2d Cir. 2010) ("[W]e conclude that the conduct encompassed by the elements of [rioting at a correctional institution], in the ordinary case, presents a serious potential risk of injury to another."), *abrogated by Johnson* (U.S. 2015).  In doing so, the Second Circuit identified the 1990 and 1988 robbery convictions as the only other predicate offenses supporting Johnson's ACCA enhancement: "[t]here is no dispute that Johnson's remaining predicate offenses, *two instances of robbery*, are violent felonies under the ACCA."  *Id.* at 87 n.2 (emphasis added); *see also* note 4, *supra*.  The Supreme Court denied Johnson's petition for writ certiorari over a dissent by Justice Scalia.  *Johnson v. United States*, 131 S. Ct. 2858 (2011).

On August 26, 2013, Johnson filed a *pro se* Section 2255 petition to vacate his sentence in light of the Supreme Court's decisions in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and *Descamps v. United States*, 133 S. Ct. 2276 (2013).  On April 11, 2014, the district court denied Johnson's petition and refused to issue a certificate of appealability.  (No. 3:13-cv-01242 (EBB), ECF No. 10.)

**C.  Second 2255 Petition**

On June 26, 2015, the Supreme Court issued its decision in *Johnson* (U.S. 2015), holding that the residual clause of the ACCA was unconstitutionally vague.  Soon after, Keith Johnson's counsel filed a motion requesting that this Court re-appoint him to represent Johnson.  The Court granted that motion.  (Crim. Dkt. ECF No. 82.)  Because he had already filed a Section 2255

petition challenging his sentence, Johnson sought leave from the Second Circuit to file a successive Section 2255 petition in this Court.  *See* 28 U.S.C. § 2255(h)(2) ("A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeal to contain . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.").  The Second Circuit issued a mandate granting Johnson leave to file a successive Section 2255 petition in light of *Johnson* (U.S. 2015) on January 6, 2016.  The mandate directed this Court to "address, as a preliminary inquiry under § 2244(b)(4), whether the Supreme Court's decision in *Johnson* [(U.S. 2015)] announced a new rule of constitutional law made retroactive to cases on collateral review, thus permitting Petitioner's new § 2255 claim to proceed."  (Crim. Dkt. ECF No. 87.)  On January 15, 2016, Johnson filed this Section 2255 petition in this Court.

## II.   <u>Discussion</u>

On April 18, 2016, the Supreme Court issued its decision in *Welch*, holding that *Johnson* (U.S. 2015) "announced a substantive rule that has retroactive effect in cases on collateral review."  136 S. Ct. at 1268.  *Welch* answers the "preliminary inquiry" identified by the Second Circuit – whether *Johnson* (U.S. 2015) applies retroactively to Petitioner Johnson's sentence – with an unequivocal "yes."  I now address the issue of the relief, if any, to which Johnson is entitled.

### A.  Whether Johnson's Original Sentence Is Unconstitutional

Johnson asserts that, in light of *Welch*, this Court must vacate his sentence and conduct a re-sentencing because one of the three felonies on which his ACCA sentence relies no longer qualifies as a predicate offense.  The government does not dispute that Johnson's 1994 rioting conviction is no longer a "violent felony" for purposes of the ACCA because it fits only within

7

the now-invalid residual clause.  The government instead makes what amounts to a harmless

error argument:  Johnson's sentence remains valid in light of his other felony convictions,

namely a 1987 conviction for conspiracy to commit first degree robbery and a 1991 conviction

for attempt to commit first degree robbery, either of which, the government argues, may serve as

a substitute ACCA predicate.  In response, Johnson argues that Judge Burns recognized *only* his

1988, 1990, and 1994 felony convictions as predicate offenses and this Court cannot "substitute"

his 1987 or 1991 convictions as a third ACCA predicate offense in place of the 1994 rioting

conviction for two reasons.  First, he contends that doing so would violate due process and

double jeopardy principles requiring the government to rely on the same felonies listed in the

indictment.  Second, he argues that the 1987 and 1991 convictions are not violent felonies under

the ACCA.  Because I agree with the second reason, I do not address the first.

 While Judge Burns did not identify explicitly which of Johnson's prior convictions she

had found to be predicate offenses supporting Johnson's ACCA sentence, the most reasonable

reading of the record is that she considered only the 1988, 1990, and 1994 convictions as

predicate offenses.[9]  Both the PSR and the Second Circuit identified those convictions – and only

those convictions – as ACCA predicates.  There is no evidence in the record that Judge Burns

---

[9] No party disputes that the three 1990 convictions (robbery in the first degree, conspiracy to commit robbery in the first degree, and assault in the second degree) serve as a single offense for the purposes of an ACCA enhancement.  The government concedes that "without additional information about these offenses, it is not clear then that they were 'committed on occasions different from one another.'"  (ECF No. 14 at 15.); *see* 18 U.S.C. § 924(e)(1).   Of these three offenses, it appears that the Second Circuit relied on only the robbery conviction in determining the three ACCA predicates that subjected Johnson to the enhancement. *United States v. Johnson*, 616 F.3d 85, 87 n.2 (2d Cir. 2010) *abrogated by Johnson v. United States*, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015) ("There is no dispute that Johnson's remaining predicate offenses, two instances of robbery, are violent felonies under the ACCA.")  Therefore, the three convictions from 1990 establish only one ACCA predicate and I will refer to them as the "1990 conviction."

found Johnson's 1987 or 1991 convictions to be predicate offenses under the ACCA.  Because one of those three convictions is no longer a predicate offense, Johnson's ACCA sentence is now supported by only two predicate offenses.

Notwithstanding the agreement that Johnson's rioting conviction is no longer a valid predicate offense, the government invites this Court to consider the possibility that *had* Judge Burns known that Johnson's rioting conviction was not a "violent felony," she would have relied on Johnson's 1987 and/or 1991 convictions to find that he satisfied the eligibility requirements of the ACCA.  Such a harmless error analysis is appropriate on a Section 2255 petition, for "even constitutional errors will not be redressed through a section 2255 petition unless they have had a 'substantial and injurious effect' that results in 'actual prejudice' to the petitioner.  *Wiggan v. United States*, No. 2016 WL 4179838, at *1 (D. Conn. Aug. 5, 2016) (*citing Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)); *see also Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s harmless error standard to section 2255 petition).[10]  Therefore, while Johnson has shown that his 1994 rioting conviction may no longer serve as an ACCA predicate, he is not entitled to relief unless the error "resulted in actual prejudice."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

### B.  Harmless Error

Johnson argues that his sentence must be vacated because neither his 1987 nor his 1991 felony conviction can serve as a third predicate offense to support an ACCA enhancement.  I

---

[10] I note that in *Villanueva v. United States*, the court conducted a harmless error analysis, but found that it was inappropriate in this context because a *Johnson* (U.S. 2015) error "can hardly be said to be anything other than structural error, which is unamenable to harmless error review." 2016 WL 3248174, at *8 (D. Conn. June 10, 2016).  This was recently characterized as a "minority view."  *United States v. Hicks*, 2016 WL 5672949, at *3 (N.D. Cal. Oct. 3, 2016) (collecting cases).  Either way, I need not address this question, as I find that the error was not harmless.

agree.  Specifically, I find (1) that Johnson's 1987 conviction for conspiracy to commit robbery in the first degree is not a violent felony for purposes of the ACCA because it does not "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. 924(e)(2)(B)(i); and (2) that Johnson's 1991 conviction for attempted robbery cannot serve as the third ACCA predicate because there is "grave doubt" that the offense underlying that conviction and the offenses underlying his 1990 conviction were "committed on occasions different from one another."  18 U.S.C. 924(e)(1).

## 1.  The Law That Applies in Harmless Error Review

As an initial matter, the parties dispute whether current law should govern the analysis of whether Johnson's 1991 or 1987 convictions are violent felonies, or whether the law as it stood on the date of his 2008 re-sentencing should apply.[11]  The Court need not resolve the issue, because even if the law at the time of Johnson's 2008 sentencing applies, conspiracy does not have "as an element" the use of force, and his 1990 and 1991 convictions were not "committed on occasions different from one another."

## 2.  Whether Johnson's Conviction for Conspiracy to Commit Robbery in the First Degree is a Violent Felony

Johnson contends that his 1987 conviction for conspiracy to commit robbery in the first degree in violation of Conn. Gen. Stat. §§ 53a-48(a) and 53a-134(a)(4) is not a violent felony for purposes of the ACCA.  I agree: conspiracy to commit robbery in the first degree is not one of the enumerated crimes listed in 18 U.S.C. § 924(e)(2)(B)(ii) ("burglary, arson, or extortion, [or a

---

[11] I note that several courts have applied current law when ruling on Section 2255 petitions under *Johnson* (U.S. 2015).  *See, e.g. Diaz v. United States*, 2016 WL 4524785, at *5 (W.D.N.Y. Aug. 30, 2016), *reconsideration denied*, 2016 WL 5404582 (W.D.N.Y. Sept. 28, 2016); *Wiggan v. United States*, 2016 WL 4179838, at *10; *Robinett v. United States*, 2016 WL 2745883, at *1 (W.D. Mo. May 11, 2016).

crime] involv[ing the] use of explosives"), and it does not have as an element of "the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(A)(i).  The conspiracy statute under which Johnson was convicted states (as it did at the time of his conviction):

> A person is guilty of conspiracy when, [1] with intent that conduct constituting a crime be performed, [2] he agrees with one or more persons [3] to engage in or cause the performance of such conduct, and [4] any one of them commits an overt act in pursuance of such conspiracy.

Conn. Gen. Stat. § 53a-48(a).  None of these elements necessarily entails the use, attempted use, or threatened use of physical force.

The government argues that a conspiracy conviction incorporates the elements of the conspiracy's objective offense, and because robbery in the first degree is a violent felony under the ACCA (at least under the law as it existed in 2008),[12] Johnson's conviction for conspiracy to commit robbery in the first degree "has" the elements of a violent felony.  This was the Third Circuit's reasoning in *United States v. Preston*, 910 F.2d 81 (3d Cir. 1990).  There, the court addressed whether the defendant's conviction for conspiracy to commit robbery under Pennsylvania law was a violent felony.  In its analysis, the court began by conceding that the conspiracy statute did not "explicitly include as an element the use, attempted use, or threatened use of physical force."  *Id.* at 86.  It noted, however, that the Pennsylvania Standard Criminal Jury Instructions direct trial courts to "define the object of the conspiracy in instructing the jury," and as a result, the elements of the crime that was the object of the conspiracy "must necessarily be proven to support a conspiracy to commit a violent felony."  *Id.* at 86 & n.5.  Thus, the court

---

[12] "[F]irst degree robbery under Connecticut law falls squarely within the first prong of the [ACCA's] definition of 'violent felony.'"  *United States v. Wiggan*, 530 Fed. App'x 51, 56–57 (2d Cir. July 19, 2013) (summary order); *cf. infra* Part II.B.4.

reasoned, if the crime that was the object of the conspiracy was a violent felony under the ACCA, a conspiracy to commit that crime would also be a violent felony.

I disagree with this analysis, at least as applied to Conn. Gen. Stat. § 53a-48(a).  The crime defined by that statute does not "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), regardless of the offense that is the object of the conspiracy.  To satisfy the elements of conspiracy under the statute, one need not have used, attempted to use, or threatened to use physical force against another person; at most, one need – when the object of the offense is first-degree robbery, as in Johnson's case – have *intended* and *agreed* that such force be used.  *State v. Jones*, 35 Conn. App. 839, 846 (1994) ("To prove the crime of conspiracy, in violation of § 53a–48, the state must establish beyond a reasonable doubt that an agreement existed between two or more persons to engage in conduct constituting a crime and that subsequent to the agreement one of the conspirators performed an overt act in furtherance of the conspiracy. . . . The state is also obligated to prove that the accused intended that conduct constituting a crime be performed.") This understanding of the statute is only confirmed by later cases from Connecticut post-dating Johnson's 2008 resentencing.  *See State v. Allan*, 131 Conn. App. 433, 440 (2011) ("That agreement, in concert with an overt act, … is sufficient under Connecticut law to constitute a conspiracy.  There are no elements enumerated in § 53a-48(a) requiring the state to prove any future or past criminal acts in order to prove the crime of conspiracy.").

It is true in Connecticut – as it was true of the Pennsylvania statute in *Preston* – that the trial court instructs the jury on the elements of the crime that is the object of the conspiracy.  *See* Conn. Crim. Jury Instr. 3.3-1 (Conspiracy – § 53a-48(a)); *Preston*, 910 F.2d at 86 & n.5.  But that means only that to convict, the jury must find that the defendant *intended* that a conspirator

12

commit acts satisfying the elements of the crime that is the object of the conspiracy.  It does not mean that the defendant or a co-conspirator *actually* committed those acts.   And while the Connecticut conspiracy statute also requires the commission of an overt act before liability may attach, such an overt act need not be the use of force and may even be a lawful act.  *State v. Trumbull*, 24 Conn. Supp. 129, 142 (Conn. Cir. Ct. 1962) ("[T]he overt act need not be a criminal act, nor does it need to constitute the very crime that is the object of the conspiracy."); *Allan*, 131 Conn. App. At 441 (under Conn. Gen. Stat. § 53a-48(a), "[A]n overt act need not be a criminal act in and of itself.").

Nor does an overt act necessarily amount to a "substantial step," as is required to prove attempt under Conn. Gen. Stat. § 53a-49.  To prove attempt under that statute, the State must show "an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."  Conn. Gen. Stat. § 53a-49.  While the Connecticut conspiracy statute requires that any member of a conspiracy "commit[ ] an overt act in pursuance of such conspiracy," Conn. Gen. Stat. § 53a-48, an overt act is not a substantial step.  *State v. Holliday*, 118 Conn. App. 35, 41, 982 A.2d 268, 271–72 (2009) ("*Attempt* to commit robbery in the first degree requires a 'substantial step' in furtherance of the crime, while conspiracy to commit first degree robbery does not."); Conn. Crim. Jury Instr. 3.3-1 (Conspiracy – § 53a-48(a) ("Element 2 – Overt Act . . . An overt act is *any* step, action, or conduct that is taken to achieve or further the objective of the conspiracy.")) (emphasis added); *State v. Turner*, 24 Conn. App. 264, 269–70 (1991) ("To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose. …") (internal quotations and citations omitted).  A conspiracy conviction requires proof of "any step . . . taken to further the . . . conspiracy;" an attempt conviction, by contrast, requires proof of a "substantial step," a more demanding showing:

> [A] substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime, and thus the finder of fact may give weight to that which has already been done as well as that which remains to be accomplished before commission of the substantive crime. ... In order for behavior to be punishable as an attempt, it need not be incompatible with innocence, yet it must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.

*State v. Sorabella*, 277 Conn. 155, 180–81, 891 A.2d 897, 914 (2006). I therefore conclude that Johnson's 1987 conviction for conspiracy to commit robbery is not a "violent felony" under the ACCA.

Even as of the 2008 re-sentencing, the Tenth Circuit had adopted a similar view, disagreeing with *Preston*. *United States v. King*, 979 F.2d 801, 803 (10th Cir. 1992) ("Because the crime of conspiracy in New Mexico is complete upon the formation of the intent to commit a felony, and does not require that any action be taken on that intent, the elements of a conspiracy to commit a violent felony do not include the [use, attempted use, or] threatened use of force."). And were the Court to consider current law, it would be clear that *Preston* is a minority view. *See, e.g., United States v. Gore*, 636 F. 3d, 728, 731 (5th Cir. 2011) (finding a conviction of conspiracy to commit robbery not to be a violent felony under the ACCA because "[t]he state . . . could obtain a conviction of conspiracy without proving beyond a reasonable doubt that the defendant committed the crime that was the conspiracy's object"); *United States v. White*, 571 F.3d 365, 369 (4th Cir. 2009) ("Applying a categorical analysis to [conspiracy to commit robbery with a dangerous weapon], we first observe that it does not have as an element the use, or threatened use of physical force against the person of another."); *see also Wiggan v. United States*, 2016 WL 4179838, at *15 (D. Conn. Aug. 5, 2016) (finding a conviction of conspiracy to commit robbery not to be a violent felony under the ACCA because "[i]ntent" to use physical

force does not amount to the actual use, threatened, or attempted use of physical force."). Because conspiracy to commit robbery in the first degree does not include as an element the use, attempted use, or threatened use of force against another person, and is not one of the enumerated offenses within 18 U.S.C. § 924(e)(2)(A)(ii), it is not a violent felony for purposes of the ACCA.

### 3. Whether the 1990 and 1991 Convictions Arise From Offenses Committed on Different Occasions

Johnson argues that the offenses underlying his 1990 and 1991 convictions were not committed on "occasions different from one another," 18 U.S.C. § 924(e)(1), and as a result, his 1991 conviction could not have served as an additional ACCA predicate offense had Judge Burns considered it at his sentencing.  "[C]onvictions stemming from the same criminal episode are combined for purposes of the ACCA."  *United States v. Rideout*, 3 F.3d 32, 34 (2d Cir. 1993); *see also United States v. Daye*, 571 F.3d 225, 237 (2d Cir. 2009) *abrogated on other grounds by Johnson* (U.S. 2015) ("[T]wo convictions arise from conduct committed on different occasions if they do not stem from the same criminal episode.").  As of the 2008 re-sentencing, and as is true today, a court deciding whether convictions stem from the same "criminal episode" was required to consider "whether the victims of the two crimes were different, whether the crimes were committed at different locations, and whether the crimes were separated by the passage of time."  *Daye*, 571 F. 3d at 237 (*citing United States v. Rideout*, 3 F.3d 32, 34 (2d Cir. 1993); *United States v. Towne*, 870 F.2d 880, 891 (2d Cir. 1989)); *see also United States v. Dantzler*, 771 F.3d 137, 145 (2d Cir. 2014) ("[W]here two of the predicate offenses occurred on the same date, the District Judge [is] compelled to look to facts such as the identities of the victims and the times and locations of the offenses.").

For example, in *United States v. Rideout*, the Second Circuit held that two of the defendant's breaking-and-entering convictions, while occurring on the same day, were the result of felonies committed on different occasions because they involved "different victims separated by at least twenty to thirty minutes and twelve to thirteen miles."  3 F.3d 32, 35 (2d Cir. 1993). The *Rideout* court distinguished that case from other cases in which "the second offense was committed while fleeing from the location of the first offense," or "where the offense locations were very close."  *Id.*  If, however, the convictions are a "part of a continuous course of conduct which was directed against a single victim, they were not committed on separate occasions." *United States v. Towne*, 870 F.2d 880, 891 (2d Cir. 1989).

Here, there is no evidence about the victims, the locations, or the timing of the two felonies that led to the 1990 and 1991 convictions.  The Court knows only that Johnson has two convictions stemming from offenses occurring on the same date, and that his counsel stated at sentencing, without elaboration, that they were "separate cases."  (July 14, 2004 Hr'g Tr.)

With respect to the 1990 conviction, the government has submitted pages from the Connecticut Superior Court's judgment file.  (ECF No. 14-4.)  These records show the date of offense (October 12, 1989), the statutes of conviction, the disposition date (November 9, 1990), a description of the sentence, and the dates and names of the motions filed by Johnson in the criminal case.  (*Id.*)  As for the 1991 conviction, similar state court records submitted by the government show the date of offense (October 12, 1989), statute of conviction, date of disposition (April 23, 1991), a description of the sentence, and the crimes charged.  (*Id.*)  These

documents contain no information regarding the circumstances surrounding the crimes, such as their time or location or the identities of the victims.[13]

The government argues that Johnson stipulated to the fact that the 1990 and 1991 convictions were "separate cases" for purposes of scoring his criminal history during a hearing held on July 14, 2004.  (Resp't Br. at 17 n.8.)  The only relevant portion of the record that the Court could find was the following:

> THE DEFENDANT: I had one question.  I had convictions that had run concurrent.  I have another conviction, and I was confused with how concurrent sentences scored in the category.  It's not clear to me.
>
> The sentence that I'm doing now for the state which is 23 years, I had a 9 years sentence which I got arrested for the same night.  This all happened the same night.  This particular case I was given 9 years concurrent with the 23 years I was receiving.  So I'm trying to understand whether these are considered two separate convictions.
>
> THE COURT: Yes, they are, sir.
>
> THE DEFENDANT:  Because I don't know.
>
> THE COURT: They weren't related cases?
>
> THE DEFENDANT: No.  Separate cases.

---

[13] The Second Circuit had not decided what sources of information courts could consider in determining whether offenses were committed on separate occasions at the time of Johnson's 2008 re-sentencing.  It held in 2014 that "in determining whether offenses were committed 'on occasions different from one another' for purposes of sentencing under the ACCA, a sentencing court is bound by the source limitations established by *Taylor* and *Shepard*."  *United States v. Dantzler*, 771 F.3d 137, 145 (2d Cir. 2014).  In doing so, the Second Circuit noted that "[t]his holding is consistent with that of many of our sister Circuits.  *Id.* at 145 n.3 (citing cases).  Therefore, as of 2008, the court would not have been clearly restricted from relying on particular sources of information, such as police reports and pre-sentence reports.  In any event, the documents from the Connecticut Superior Court judgment file *do* appear to satisfy *Shepard*, which limits the Court's inquiry to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."  *Shepard v. United States*, 544 U.S. 13, 26 (2005).  Thus, the Court may rely on them.

(July 14, 2004 Hr'g Tr.)  This colloquy provides no additional information that would support the government's claim.  The colloquy suggests that the offenses underlying the two sets of convictions were committed on "the same night," but provides no other information about the circumstances that would permit a court to determine that the offenses were committed on "different occasions" within the meaning of ACCA.  In this sense, the 1991 conviction is no different than the other two 1990 convictions (which included conspiracy to commit robbery in the first degree and assault in the second degree), as to which the Government concedes that there is no basis to conclude that they occurred on "different occasions" than the 1990 conviction for robbery in the first degree.  (ECF No. 14 at 15; *see* note 9, *supra*.)

The government further argues that the fact that Johnson did not object to the Probation Office's criminal history scoring means that "the concerns (partially) motivating the remand in [*Daye*] are not present in the instant case."  (Resp't Br. at 17 n.8.)  It is unclear what the government is referring to in this statement.  Nothing in the *Daye* court's opinion speaks to this issue.  The only statement by that court pertaining to the "separate occasions" issue was that the parties had not addressed the issue with the district court at the original sentencing, and because the court was remanding the case for other reasons, it was more appropriate to have the district court address it in the first instance.  571 F.3d at 237.

Given the lack of information surrounding the circumstances of the 1990 and 1991 convictions, one possibility would be to resolve the issue against the party that bears the burden of proof.  "For reasons of finality, comity, and federalism, habeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.''" *Davis v. Ayala*, 135 S. Ct. 2187, 2197, 192 L. Ed. 2d 323, *reh'g denied*, 136 S. Ct. 14, 192 L. Ed. 2d 983 (2015) (*citing Brecht v. Abrahamson,* 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d

353 (1993)). [14]  In *Davis*, the Supreme Court stated that "[b]ecause [the petitioner] seeks federal

habeas corpus relief, he must meet the *Brecht* standard." *Id.* at 2198. [15]  Though the petitioner

bears the burden, if the Court has "grave doubt about the likely effect of an error," meaning that

"in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as

to the harmlessness of the error," the judge "should treat the error . . . as if it had a substantial or

injurious effect or influence." *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995) (internal quotation

marks omitted).  "When a federal judge in a habeas proceeding is in grave doubt about whether a

trial error of federal law had 'substantial and injurious effect or influence in determining the

jury's verdict,' that error is not harmless. And, the petitioner must win." *Id.* at 436.  As the

Supreme Court in *O'Neal* noted, "the opposite rule . . . would tell judges who believe individuals

are quite possibly being held 'in custody in violation of the Constitution' that they cannot grant

relief." *Id.* at 442.

---

[14] While *Davis* establishes that the burden is on the petitioner to show that the error was harmful,
the Supreme Court has not always been so clear.  *See, e.g., Fry v. Pliler*, 551 U.S. 112, 121 n.3
(2007) (Where the Court chose not to reach the question presented of whether the petitioner or
the state bears the burden of persuasion on a question of prejudice in a habeas case because
"[t]he State has conceded throughout this § 2254 proceeding that it bears the burden of
persuasion."); *United States v. Dominguez Benitez*, 542 U.S. 74, 82, 124 S. Ct. 2333, 2339, 159
L. Ed. 2d 157 (2004) ("When the Government has the burden of showing that constitutional trial
error is harmless because it comes up on collateral review, the heightened interest in finality
generally calls for the Government to meet the more lenient *Kotteakos* standard.") (*citing Brecht
v. Abrahamson,* 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).  This lack of
clarity led to contradictory statements from the Second Circuit.  In *Besser v. Walsh*, the Second
Circuit stated that "[t]he State bears the burden of persuasion in such cases," 601 F.3d 163, 189
(2d Cir.), *vacated in part on reh'g en banc sub nom. Portalatin v. Graham*, 624 F.3d 69 (2d Cir.
2010).  The Second Circuit earlier stated, however, that the petitioner bore this burden.  *Bentley
v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994).
[15] I note also that some courts in habeas cases have imposed the burden on the government to
produce documents showing by a preponderance of the evidence that the petitioner is still subject
to an ACCA enhancement.   *See Williams v. United States*, 2016 WL 5078381, at *5 (W.D.N.Y.
Sept. 20, 2016); *United States v. Evans*, 2015 WL 9480097, at *2 (W.D. Pa. Dec. 29, 2015);
*United States v. Jones*, 2016 WL 4186929, at *5 (D. Minn. Aug. 8, 2016); *United States v.
Harris*, 2016 WL 4539183, at *6 (M.D. Pa. Aug. 31, 2016).

I find that I am "in virtual equipoise as to the harmlessness of the error," and thus cannot find that the error was harmless. *Id.* at 435. The fact that the State of Connecticut charged Johnson in two different cases for conduct occurring on the same day could mean either that these felonies were committed on different "occasions" or that they were committed on the same occasion. There is simply no way to know on the record before this Court, and thus "the petitioner must win." *Id.* at 437. This case presents the "special circumstance" that the Supreme Court considered in *O'Neal*, "in which record review leaves the conscientious judge in grave doubt about the likely effect of an error." *Id.* at 435.

Based on this information, I have "grave doubt" that Judge Burns would have found that the 1990 and 1991 convictions arose from offenses committed on different occasions, and thus that the 1991 conviction could have served as a predicate offense separate from the 1990 conviction.[16]

### 4.   Whether Robbery in the First Degree is a Violent Felony

Johnson has also urged the Court to consider *United States v. Jones*, No. 15-1518 (2d Cir. July 21, 2016), where the Second Circuit recently held that New York first-degree robbery was not categorically a crime of violence under the Career Offender Guideline.[17] Johnson argues that the Court should find that *Jones* extends to his 1988 conviction for robbery in the third degree, and that the 1988 conviction can no longer support an ACCA enhancement. (Pet.'s Supp. Br., ECF No. 37 at 4-5.) *Jones* has not been held to be retroactive, however, and there is no dispute

---

[16] Johnson also argues that his 1991 conviction for attempt to commit robbery in the first degree in violation of Conn. Gen. Stat. §§ 53a-49(a)(2) and 53a-134(a)(4) is not a violent felony for purposes of the ACCA. Because I find that the 1991 conviction was not committed on a separate occasion from the 1990 conviction, I do not address this argument.

[17] The decision has since been vacated pending the Supreme Court's decision in *Beckles v. United States*, No. 15-8544, 2016 WL 4218143 (Aug. 11, 2016). *United States v. Jones*, No. 15-1518 (2d Cir. Oct. 3, 2016).

that the sentencing judge relied on the 1988 conviction in determining that Johnson was subject to the ACCA enhancement.  The judge did so not on the basis of the residual clause (in violation of *Johnson* (U.S. 2015)), but based on the first prong of the ACCA.  Because *Jones* is not retroactive (and has in fact been vacated), and Judge Burns did not use the residual clause to determine that the 1988 conviction was an ACCA predicate offense, the 1988 conviction remains a predicate offense.

* * * * *

Thus, as the sentence stands, only two predicate offenses support Johnson's ACCA eligibility, which is insufficient under the statute.  Without the ACCA enhancement, Johnson's conviction under 922(g)(1) authorizes a sentence of "not more than 10 years."  18 U.S.C. § 924(a)(2).  Johnson's sentence of 240 months is therefore "not authorized by law."  28 U.S.C. § 2255(b).  I therefore grant his Section 2255 motion and vacate his sentence.

### C.  On Re-Sentencing, Johnson is not Subject to the ACCA's Enhancement

I now must re-sentence Johnson.  When a court conducts a resentencing, the law at the time of the resentencing applies.  *See, e.g.*, *United States v. Greer*, 285 F.3d 158, 180 (2d Cir. 2002) ("[B]ecause we are remanding this case for resentencing . . ., when recalculating the [defendant's] sentence[,] the District Court must do so in accord with the principles of [intervening changes of law, including] *Apprendi*.").  The same analysis that was conducted in determining whether the *Johnson* error was harmless applies on resentencing.

For purposes of the re-sentencing, "[i]t is the government's burden to establish whether a prior conviction qualifies under section 924(e)(2)."  *Wiggan v. United States*, 2016 WL 4179838, at *5 (D. Conn. Aug. 5, 2016) (*citing United States v. Rosa*, 507 F.3d 142, 151 (2d Cir. 2007)).  The government has failed to meet its burden of proving that Johnson has three prior convictions

for a violent felony.  Johnson's 1987 conviction for conspiracy to commit robbery in the first

degree is not a violent felony under the ACCA, and thus cannot be considered.  And the

government has failed to prove by a preponderance of the evidence that Johnson's 1991 and

1990 convictions were the result of felonies committed on separate occasions.  As a result,

Johnson's 1991 conviction cannot be considered.

### III.    <u>Conclusion</u>

In light of *Johnson* (U.S. 2015) and *Welch*, Johnson's sentence of 240 months

imprisonment is hereby VACATED.  On re-sentencing, because the government has failed to

prove that Johnson has been convicted of three violent felonies for purposes of the ACCA, its

mandatory minimum enhancement may not be applied to Johnson's sentence.

Johnson was convicted of violating 18 U.S.C. § 922(g), which carries a maximum

sentence of 120 months imprisonment.  18 U.S.C. § 924(a)(2).  I therefore resentence Johnson to

120 months imprisonment.  Because he has already served more than that amount of time as a

result of this conviction, he is entitled to immediate release.  An amended judgment will be

entered separately in *USA v. Johnson*, 3:03-cr-215 (MPS), reducing Johnson's term of

imprisonment from 240 months to 120 months.  It will also reduce Johnson's term of supervised

release from 5 years to 3 years.  All other provisions of the Judgment dated October 21, 2008

(Crim. Dkt., ECF No. 72), will remain in effect.  The Clerk shall provide copies of this

memorandum and order and of the amended judgment to Johnson at the institutional address

from which his recent motions were received, and to the Bureau of Prisons by fax or email.

IT IS SO ORDERED.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              December 19, 2016